UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 6:18-CR-48-REW-HAI |
| v. | ) | |
| | ) | OPINION AND ORDER |
| RICKY MELTON, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Ricky Melton—facing controlled substance and firearms charges (DE #20)—moved to suppress items seized and statements allegedly made during (or derived from) execution of a July 4, 2018 search warrant at 999 Collins Fork Road in Manchester, Kentucky. DE #119. The United States opposed. DE #134. Judge Ingram held an evidentiary hearing on February 8, 2019,[1] *see* DE #150 (Minutes), and (after thorough analysis) recommended denial, *see* DE #152 (R&R). Defendant timely objected (DE #155), and the United States responded to Melton's objections (DE #159).

The Court, independently reviewing the matter but agreeing with Judge Ingram, **DENIES** suppression. The state judge had a substantial basis for warrant issuance. The warrant was adequately particular, and law enforcement remained within the warrant's proper scope. Though

---

[1] The parties agreed during a prehearing teleconference that the facts bearing on constitutionality of the warrant were undisputed. *See* DE #152 at 2. Accordingly, Judge Ingram limited the evidentiary hearing to considering whether Melton's statements during the July 4 search were voluntary, and, if the search was unconstitutional, whether later statements Melton made were sufficiently attenuated to be admissible. *See id.*; *see* DE #140 (Teleconference Minutes) & accompanying digital record. Melton did not object to Judge Ingram's findings as to those issues.

1

blemished, the warrant application, accepted by a neutral, warrant-issuing judge, provides good faith cover for the police. For these reasons, the search and resultant statements avoid exclusion.

The Court reviews *de novo* portions of the R&R to which Melton specifically objects. *See United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) (citing *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001)); 28 U.S.C. § 636(b)(1) (directing district judges to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made"); Fed. R. Crim. P. 59(b)(3). The Court is not required to "review . . . a magistrate[] [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985). Where parties do not object to the R&R, they waive any right to review. *See* Fed. R. Crim. P. 59(b)(2); *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017) ("When a party . . . fails to lodge a specific objection to a particular aspect of a magistrate judge's report and recommendation, we consider that issue forfeited on appeal."); *see also United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008) (noting that "[t]he law in this Circuit is clear" that a party who fails to object to a magistrate judge's recommendation forfeits his right to appeal its adoption). Melton objects to three of Judge Ingram's findings: (1) that the warrant described the residence with constitutionally sufficient particularity (and, relatedly, that the warrant properly authorized law enforcement's search of surrounding structures/vehicles on Melton's property); (2) that the supporting affidavit adequately demonstrated probable cause; and (3) that, regardless of the first two conclusions, the *Leon* good-faith exception precludes exclusion of the evidence.

I.  **Warrant Particularity and Scope of Search**

At the outset, Melton and the United States agree that two aspects of the warrant's premises description lacked the ideal degree of clarity—first, the warrant references a double-wide trailer,

while Melton's property instead houses a single-wide trailer, and second, the photograph attached to the affidavit does little to aid identification of the residence. *See* DE #119-4 at 1 (warrant's description of residence); DE #119-3 at 10 (photograph accompanying affidavit). However, the parties also agree that several other (in the Court's view, more critical) aspects of the description were indisputably correct: the fact that the property was Melton's residence, its address (street name, number, city, and zip code), the listed specific travel directions to the property, identification of auxiliary structures on the property (including "a large metal garage" and "two camper trailers"), and the notation that the residence was "located under a hill[.]" DE #119-3 at 1. Judge Ingram found that, as a whole, the warrant described the premises with sufficient particularity and that the auxiliary structures were properly within the scope of the permissible search. *See* DE #152 at 6–7.

Melton first argues that the Fourth Amendment is unambiguous and case law is thus irrelevant to (or perhaps violative of) the particularity dictates. DE #155 at 2–3. The Fourth Amendment guarantees, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In context, Melton advocates for a hyper-technical reading of the word "particularly"—which binding precedent expressly rejects in favor of a practical approach. The proper inquiry "'is not whether the description is technically accurate in every detail' . . . but rather whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched.'" *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (quoting *United States v. Prout*, 526 F.2d 380, 387–88 (5th Cir. 1976) and *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989)); *see also United States v.*

3

*Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016) (quoting *Knott v. Sullivan*, 418 F.3d 561, 568–69 (6th Cir. 2005)). Particularity is not the same as perfection.

The sole error in the warrant's description—misidentification of Melton's residence as a double-wide rather than single-wide trailer—is functionally insignificant against the backdrop of accurate details provided. Given the correct (and comprehensive) travel directions, street address, and listing of identifiable auxiliary structures on the property, there was ample information to enable the executing officer to locate the property with ease, and there was no reasonable probability that another property would be mistakenly searched.[2] *See United States v. Howard*, 621 F.3d 433, 456 (6th Cir. 2010) (considering misidentification of a residence as a "single parcel" when, in fact, the residence consisted of two mobile homes a "minor, technical inaccuracy"); *see also Durk*, 149 F.3d at 466 (finding a warrant with a transposed house number and incorrect directional descriptor of "east" versus "west" but with otherwise accurate details valid); *accord United States v. Pelayo–Landero*, 285 F.3d 491, 496–97 (6th Cir. 2002) (same). And, notably, as the executing officer in Melton's case (Detective Raleigh Benge) was also the affiant, the risk of an errant search was further reduced (*compare* DE #119-3 at 1 *with* DE #119-4 at 5–6). *See, e.g.*, *Durk*, 149 F.3d at 466 (noting as significant that "the executing officer in this case was also the affiant"); *Crumpton*, 824 F.3d at 612 (finding a warrant valid where, despite an incorrect address, it "include[d] other specific descriptors that remove[d] the probability that the wrong location

---

[2] Melton's contention that "there is not only a reasonable probability but the executing officers in fact searched a home other than the one described in the warrant[]" (*i.e.*, Melton's single-wide trailer on the property as opposed to the misidentified and nonexistent double-wide variation), *see* DE #155 at 5, intentionally misapprehends the second *Knott* inquiry, *see* 418 F.3d at 568 (considering "whether there is reasonable probability that some other premises may be mistakenly searched"). Melton does not identify any likely confusion between the warrant description and another premises, and, indeed, the executing officers in fact did reach and search Melton's property, as intended.

4

could be searched, especially when the warrant affiant participate[d] in the execution of the search"); *accord United States v. Hang Le–Thy Tran*, 433 F.3d 472, 480 (6th Cir. 2006) (same). Nor does the blurry photograph detract from the sufficiency of the description. It is perhaps largely unhelpful, but not inaccurate, and Melton offers no authority (and the Court independently locates none) requiring a photograph of the premises at all. The trailer as depicted would surely be recognizable on approach.

Melton next objects to the scope of the search, which (per the inventory) extended beyond the main single-wide trailer to a camper, gray storage shed, blue Ford Ranger truck, and green garage on the property. *See* DE #119-4 at 6–11. Although Melton objects generally to the R&R's conclusion that these were all within the warrant's parameters, he does not dispute any of Judge Ingram's factual bases or substantively engage with the required analysis. First, the warrant expressly permitted executing officers to search "any and all vehicles located on the premises[]" and "any and all persons on the premises[.]" DE #119-3 at 1–2; DE #119-4 at 2. Despite Melton's untethered characterization of this as "form language[,]" *see* DE #155 at 4, there are several case-specific references to vehicles and additional structures on the property: "The residence has a gravel driveway that leads into a parking lot that contains numerous vehicles. There is also a large metal garage located on the property along with what appears to be two camper trailers." DE #119-4 at 1. The warrant further specifically authorizes the search of "any storage contrainer [sic] or outbuilding located on the property[.]" *Id.* at 2.[3] And, the supporting affidavit explicitly states that the informant conducted drug transactions with Melton inside the garage on the property. *See* DE #119-3 at 6. As Judge Ingram noted (and is undisputed), the shed, garage, camper, and truck were

---

[3] This phrase appears in the "personal property" section, but a fair reading, in context, is that the issuing judge was extending search authority, as to the enumerated search categories, to containers and outbuildings.

5

all commonly accessible from the gravel driveway and encircled within the tree line along the perimeter of the bounded property. *See* DE #152 at 10; *see also* DE #134-9 (aerial photograph of the property).

Melton (cursorily) argues that the warrant's identification of the "residence of Ricky Melton" necessarily limits its scope to the dwelling itself (despite the warrant's explicit inclusion of auxiliary buildings and vehicles). Considerable authority compels the opposite conclusion— that a "residence" identified by street number is broadly construed as including all structures within its curtilage. *See, e.g.*, *United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) (quoting *United States v. Watkins*, 179 F.3d 489, 506 (6th Cir. 1999) (Boggs, J., concurring)) ("Our law presumes . . . that 'a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage.'")); *id.* at 524 (quoting *Watkins*, 179 F.3d at 506) ("The weight of the authority is clear that when searching for small portable items such as drugs and records, there is no need to provide separate probable cause or identification of auxiliary structures."); *United States v. Biles*, 100 F. App'x 484, 491 (6th Cir. 2004); *United States v. Carmack*, No. 08-cr-50-GFVT, 2009 WL 8753386, at *2 (E.D. Ky. Jan. 13, 2009), *aff'd*, 426 F. App'x 378 (6th Cir. 2011) (collecting cases). Here, the warrant textually extends to outbuildings and vehicles on the premises to be searched.[4]

---

[4] The cases also extend search authority to vehicles within the curtilage. *See, e.g.*, *United States v. Brown*, 142 F.3d 437 (6th Cir. 1998) (Table), 1998 WL 68931, at *4 ("The general rule is that a warrant authorizing the search of a certain premises usually includes any vehicles located within its curtilage if the particular objects of the search might be located in the vehicles."); *United States v. Hudson*, 52 F.3d 326 (6th Cir. 1995) (Table), 1995 WL 234680, at *7 (quoting *United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985)) ("[A] search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises."); *United States v. Thompson*, 91 F.3d 145 (6th Cir. 1996) (Table), 1996 WL 428418, at *3 (discussing *United States v. Combs*, 468 F.2d 1390, 1392 (6th Cir. 1972), which "held that because the car was located within the curtilage of the house and reasonably appeared to belong to the owner of the premises searched, the search was legal[,]" and

Melton next challenges whether the (undisputed) facts support a finding that the outbuildings and vehicle were within the curtilage of the Collins Fork Road residence. The Court considers (to the extent these factors illuminate "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment Protection"): (1) the proximity of the area to the home; (2) whether the area is included in an enclosure surrounding the home; (3) the nature of the area's uses; and (4) whether the homeowner has taken steps to protect the area from the view of passersby. *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997) (quoting *United States v. Dunn*, 107 S. Ct. 1134 1139–40 (1987)). The curtilage inquiry is commonsense and practical. *See id.* (quoting *Oliver v. United States*, 104 S. Ct. 1735, 1743 (1984)).

The unchallenged photographic evidence demonstrates that the campers, shed, garage, and vehicles were all in close proximity. *See* DE #134-9 (aerial photograph); DE #134-8 (photograph showing the blue truck parked in front of the single-wide trailer); DE #134-6 (showing two campers parked directly adjacent to the single-wide trailer). The gravel drive identified in the warrant's description commonly connected all auxiliary structures and vehicles. *See* DE #134-9; DE #119-4. The affidavit indicated fluidity of use between the garage and residential trailer, stating that the informant observed Melton walk from the garage to the residence and back to obtain additional cash during the course of a single drug transaction (which, also, further highlights the proximity of the structures). *See* DE #119-3 at 6. And, as Judge Ingram pointed out, trees surround the entire property and bound the structures and vehicles. DE #152 at 10; DE #134-9. Additionally, it does not appear that any of the auxiliary structures or vehicles were separated from the dwelling

---

reasoning similarly); *see also United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (collecting cases). Here, Melton has not contested (actual or apparent) ownership or control over the searched vehicles.

or hidden from view relative to the dwelling, and the photographic and video evidence, in fact, indicate the opposite. Accordingly, the surrounding structures and vehicles on the property—which the warrant scope expressly included—were within the curtilage of the Melton residence. Moreover, the accompanying affidavit[5] indicated the garage's intimate connection to the suspected drug activity; thus, given all circumstances, executing officers were authorized to search the other structures (and vehicles) for portable evidence of drug activity. *See Paull*, 551 F.3d at 524.

II. **Probable Cause**

Judge Ingram concluded that the supporting affidavit—which relied on information obtained from a confidential source of information (SOI#1)—was sufficient to establish probable cause under proper review standards. See DE #152 at 5. Melton argues that: (1) there was neither sufficient indication of SOI#1's reliability nor adequate independent corroboration of SOI#1's statements; and (2) regardless, the SOI's reports lacked the necessary detail to establish probable cause.

Probable cause assessment is limited "to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). To establish probable cause, "an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the

---

[5] The affiant, who touted his own training and experience and relied also on other law enforcement expertise, opined at several spots that, as to drug traffickers, specific types of contraband or evidence of value could appear in their vehicles, *see* DE #119-3 ¶ a, in "the curtilage of their residences," *id.* at (h), and "within their vehicles, residences . . . or within the curtilage of their residences[,]" *id.* at (m). An issuing judge can rely on the validated opinion of an applying law enforcement affiant. *See United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) ("A judicial officer may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found[.]") (internal quotation marks and citation omitted); *accord United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003).

items will be found in the place to be searched.'" *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016)). Where, as here, the objects of the search are contraband or drugs, the first prong is satisfied, and the affidavit need only demonstrate "'a fair probability' that the drugs 'will be found in a particular place.'" *Church*, 823 F.3d at 355 (quoting *Illinois v. Gates*, 103 S. Ct. 2317, 2332 (1983)). This "fair probability" showing requires "more than mere suspicion" but "less than *prima facie* proof[.]" *Abernathy*, 843 F.3d at 249. "Whether the affidavit gives rise to this fair probability 'depends on the totality of the circumstances.'" *Brooks*, 594 F.3d at 493 (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Judge Ingram appropriately viewed the record through a lens that ensures deference to the issuing court, probes nontechnically for just a substantial issuance basis, and tests for whether the warrant issued arbitrarily. *See* DE #152 at 4–5; *see United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (noting that reviewing courts must afford the issuing judge's determination "great deference" and stressing the impropriety of "hypertechnical critique[s] of warrants").

A reviewing judge must consider an informant's "veracity, reliability, and basis of knowledge" in making the probable cause determination. *United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012) (citing *Brooks*, 594 F.3d at 493). Although the affidavit here did not speak to SOI#1's track record, several aspects of SOI#1's information offer indicia of reliability. First, SOI#1 (known to Detective Benge,[6] but unknown to the issuing judge) professed to observing drug transactions firsthand and provided several concrete details about the interactions (including one specific date, quantities and types of substances, exchange particulars, the location, and others that

---

[6] Given SOI#1's personal identification of Melton's photograph and residence to Detective Benge, the Court logically concludes that Detective Benge and SOI#1 interacted face-to-face on at least July 1, 2018. *See* DE #119-3 at 6. That Benge confirmed SOI#1's identity is a fair inference.

9

were present). *See United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) ("[A]n explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's tip] to greater weight than might otherwise be the case." (internal quotation marks and citation omitted)). Additionally, SOI#1 was able to positively identify to Detective Benge a photograph of Melton, Melton's residence, and, more specifically, the garage where SOI#1 observed drug sales. DE #119-3 at 6.

Further, SOI#1's statements were indeed inculpatory; SOI#1 admitted to "obtain[ing] ½ ounce of methamphetamine from [Melton] on 3 to 4 occasions" and identified other individuals who would have specific knowledge of those criminal interactions. *Id.* at 5–6. SOI#1 specified that in one transaction involving or witnessed by himself/herself, Melton and an additional drug source met about a week before June 28, 2018, in the garage on Melton's property; although SOI#1 did not clarify his/her particular role, SOI#1's intimate involvement in the transaction is apparent. *Id.* at 6. The source provided granular detail on drug type, cash paid, and mechanics of the late June 2018 deal. This included witnessing Melton on site, leaving the garage and entering (showing dominion over) the residence to retrieve additional cash for the expensive transaction. The informant knew the precise facts of the bargain. SOI#1 also admitted to acting as a "middle man" in drug transactions at Melton's residence.[7] *Id.* SOI#1's admissions are certainly "against penal interest[;]" the self-incrimination thus provides another indicium of reliability. *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir. 1976); *United States v. Braden*, 248 F. App'x 700, 703

---

[7] Melton asserts that SOI#1's purported role as a "middle man" "doesn't at all fit into [his] claimed relationship to or participation in any activities involving Melton." DE #155 at 10. Melton fails to explain this position. The affidavit may not flesh out the details of precisely how SOI#1 acted as a "middle man," but it is undoubtedly conceivable that a person who admittedly purchased ½ ounce quantities of methamphetamine from Melton on multiple occasions could have acted as a broker or facilitator. The point is that confessing to a drug trafficking role as part of a tip has the added credibility of an action against self-interest.

(6th Cir. 2007); *United States v. Riddick*, 134 F. App'x 813, 821 (6th Cir. 2005) (collecting cases). Detective Benge's corroboration efforts also lend some credence to SOI#1's information. Benge corroborated SOI#1's tip through "other sources of information" (in context, likely other individuals), as well as "through the search[] of messages in electronic communications" (likely referring to text messages). DE #119-3 at 5.[8]

Critically, the informant personally observed (indeed, admittedly participated in) drug transactions at Melton's residence, positively identified Melton and the residence, named other individuals who were present during the transactions, and specified types and amounts of controlled substances involved. Further, contrary to Melton's contention that the described transactions "are unspecific about time or place and are limited, at best, to suggesting the presence of contraband in Melton's residence[,]" *see* DE #155 at 8, the affidavit provides that SOI#1 observed Melton pay over $10,000 in cash for "800 Xanax pills and 250 oxycodone pills" during a transaction that took place in Melton's garage roughly a week prior to June 28, 2018, *see* DE #119-3 at 6. The SOI watched Melton retrieve cash for the deal and then receive the significant quantities. Ultimately, "[t]he probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Brooks*, 594 F.3d at 493 (quoting *Frazier*, 423 F.3d at 531). Given the indicia of reliability, SOI#1's self-incriminating actions, corroboration via messages and other individuals, and the factual detail provided in the

---

[8] This needs more detail to be of significant use. The most the Court can fairly glean is that Benge got some corroboration from some additional sources and that some electronic messaging also buttressed SOI#1. The information lightly props the credibility and reliability of SOI#1. Benge also conducted a database search to determine associations with the Collins Fork Road address, but, in what the United States describes as a typographical error (*see* DE #134 at 14 n.3), the affidavit states that Detective Benge connected "Jeffry Ghent" [sic] (a co-defendant in this case) to the residence. DE #119-3 at 6. The Court agrees with Melton that it should ignore this entry in the calculus. There is not enough in the record to find that the entry was intended to refer to Melton.

affidavit—and affording the issuing judge's determination the proper deference, *see Archibald*, 685 F.3d at 553—the totality of the circumstances demonstrated a fair probability (and certainly a substantiality for such finding) that officers would locate drugs on the premises.

The application, a human product, has some flaws. Benge could have detailed his corroborative efforts better. The photo could be clearer, and the description could be more precise. Benge could have eliminated the Ghent error and could have included finer data on SOI#1's dates of involvement. The Court's role is not to catalog deficits but rather to judge the sufficiency of the whole in a commonsense, reasonable manner, giving proper deference to the issuing judge. Here, probable cause is a fairly close call, but the Court sees a substantial basis for warrant issuance (a sufficiently credible and reliable attributed tip, from a known source with extensive ties to the premises, confessing criminal exposure, of very recent and well detailed high-volume trafficking at Melton's garage and home). Judge House independently reviewed the application and did not act arbitrarily in authorizing the search. The motion to suppress thus fails.

### III. Good-Faith Exception

Melton's objection to Judge Ingram's objective good-faith finding is relatively conclusory and merely restates his prior two arguments without expansion. He simply asserts that the warrant was so general, and the supporting affidavit so woefully inadequate, that no reasonable officer would have believed the resulting search was constitutional. *See* DE #155 at 11. "Courts should not . . . suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984)). The *Leon* exception typically does not apply in four scenarios: (1) where the affidavit contains information the affiant knew or should have known was false; (2) where the issuing judge was not impartial;

12

(3) "where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]" or where the affidavit was merely "bare bones"; and (4) "where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). Melton urges the Court to find the third and/or fourth exceptions applicable here.

Even if the affidavit did not establish probable cause, given its level of factual detail (based on the informant's firsthand knowledge) and the indicia of reliability present, it was certainly more than "bare bones." *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998)) ("A 'bare bones' affidavit 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'"); *cf. United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (applying the third *Leon* exception where the affidavit heavily relied on an anonymous informant's tip that was "the product of multiple layers of hearsay" and "sparse in relevant detail"). And, as discussed at length in this opinion, the one minor technical error in the warrant's description of the premises (the mislabeling of the trailer as a double-wide) is hardly fatal to the adequacy of the premises description as a whole; the slight descriptive flaw certainly does not render the warrant so "facially deficient" that no reasonable officer would have relied upon it. *Washington*, 380 F.3d at 241. It was objectively reasonable for the officers to rely upon the warrant and issuing judge's probable cause determination in this case.

"The [exclusionary] rule's sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). Thus, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at 2426–27 (citing *United States v. Janis*, 96 S. Ct. 3021, 3032 (1976)). "The Supreme Court has effectively created

13

a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, 'the benefits of deterrence must outweigh the costs." *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (quoting *Herring v. United States*, 129 S. Ct. 695, 700 (2009)); *accord United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019) (quoting *Davis*, 131 S. Ct. at 2427) ("[T]he deterrence benefits of suppression [must] outweigh its heavy costs."). As "[exclusion] almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence[,]" *Davis*, 131 S. Ct. at 2427, it should be courts' "last resort" rather than their "first impulse[,]" *Moorehead*, 912 F.3d at 938 (quoting *United States v. Fisher*, 745 F.3d 200, 203 (6th Cir. 2014)).

In weighing the deterrent benefits of exclusion, the Supreme Court has directed lower courts to focus on the culpability of the law enforcement conduct at issue. *Davis*, 131 S. Ct. at 2427 (citing *Herring*, 129 S. Ct. at 701). Where law enforcement acted with "'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* (citing *Herring*, 129 S. Ct. at 702); *see also Herring*, 129 S. Ct. at 702 ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). In contrast, where police "conduct involves only simple, 'isolated' negligence," *Davis*, 131 S. Ct. at 2427–28 (citing *Herring*, 129 S. Ct. at 698), or where the officers acted "with an objectively 'reasonable good-faith belief' that their conduct [wa]s lawful," the remedy of exclusion is improper, *id.* at 2427 (citing *Leon*, 104 S. Ct. at 3413). Here, because the Court finds that it was objectively reasonable for executing officers to rely on the warrant's description and the issuing judge's probable cause determination, there is no police conduct "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the

14

price paid by the justice system." *Herring*, 129 S. Ct. at 702. For that alternative reason, the Court denies Melton's gambit.

IV. Conclusion

Accordingly, the Court **OVERRULES** the objections (DE #155), **ADOPTS** the R&R (DE #152) per the analysis outlined in this opinion, and **DENIES** the suppression effort (DE #119), both as to the search and as to any linked statements.

This the 8th day of April, 2019.

Signed By:
*Robert E. Wier*  /s/ REW
United States District Judge